# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>ROBERT WILLIAMS,<br><br>                    Defendant. | CASE NO. 11cr3529-BEN<br><br>**ORDER**<br>**DENYING MOTION FOR**<br>**RECONSIDERATION** |

Now before the Court is Defendant's motion for reconsideration of an Order denying a motion to suppress evidence (filed January 9, 2012). The motion for reconsideration is denied.

## BACKGROUND

According to the motion, the evidence in this case resulted from an investigation by local law enforcement and the execution of a state search warrant. The search warrant, in turn, was based upon answers given by Defendant to a pre-employment questionnaire. Answering the questionnaire was part of the process of applying to be a San Diego Police Department police officer. Copies of the questionnaire, the search warrant affidavit, and the search warrant have now been filed. Defendant contends that as a matter of state law it was unlawful for his questionnaire answers to be disclosed and used to obtain the search warrant, resulting in an unlawful search and

- 1 -

unlawfully obtained evidence.  Alternatively, Defendant contends that his questionnaire answers may not be used in a criminal proceeding.

## ANALYSIS

### The Fourth Amendment

Rule 41 of the Federal Rules of Criminal Procedure sets out the procedural requirements for a federal search warrant.  But this case deals with evidence obtained by state officers, using a state warrant, based on violations of state law.  Though neither party addresses the issue, the Ninth Circuit has said that when such evidence is used in a federal prosecution, the requirements of Rule 41 do not apply.  Instead, the standard is whether the warrant comports with the requirements of the Fourth Amendment.  *United States v. Martinez-Garcia,* 397 F.3d 1205, 1213 (9th Cir. 2005) (citing *United States v. Crawford*, 657 F.2d 1041, 1046 (9th Cir. 1981).  Defendant does not complain about the procedure used to obtain or execute the search warrant.  Instead, he asserts that the exclusionary rule should apply.   The exclusionary rule throws out evidence that has been obtained by the government illegally.  *United States v. Shelter*, 665 F.3d 1150, 1156-57 (9th Cir. 2011).  It applies to both the direct products of an illegal search as well as to "fruits of the poisonous tree." *Id.* at 1157.

First, Defendant argues in support of his suppression motion that the police department pre-employment questionnaire asked questions that invaded his right to privacy,[1] and that he was warned that he would be subjected to a polygraph examination to test his answers to the questionnaire.  He contends that both requirements were unlawfully imposed and therefore his answers were illegally obtained.[2]  This Court disagrees.

There are at least two problems with this defense argument.  First, it assumes that the answers were compelled.  Second, it assumes that California laws protecting police officers also apply to citizens applying for the job of a police officer.  Both assumptions are wrong.  Defendant

---

[1] The right to privacy granted under the California Constitution is broader than that granted under the United States Constitution.

[2] A review of the police affidavit underlying the search warrant shows that it was Defendants' answers to the pre-employment questionnaire that provided much of the factual basis for issuance of the warrant.  The Government does not dispute this finding.

- 2 -

was not forced to apply for a police department position. He was free to change his mind at any time. He was not compelled by law to answer any of the questions on the pre-employment questionnaire. Instead, the government intrusion upon Defendant's right of privacy was invited by the Defendant. Although no cases on point have been found, Defendant's case is analogous to that of a police officer who voluntarily seeks an inter-department transfer to a more sensitive position. In that case, California courts find the intrusion into an applicant's privacy to be both voluntary and justified by the right of the public to an honest government. *See Los Angeles Police Protective League v. City of Los Angeles*, 35 Cal.App.4th 1535, 1541-44 (1995) ("In this case, the government intrusion. . .is invited: officers know of the polygraph requirement, yet agree to it by applying for positions in the affected divisions. Participation is not coerced or involuntary.").

For an invasion of privacy, the California Supreme Court has held, "the plaintiff in an invasion of privacy case must have conducted himself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal.4th 1, 26 (1995). Moreover, California courts have held, "that police officers must yield some of the privileges enjoyed by the citizenry at large due to the public trust placed in these employees." *Los Angeles Police Protective League,* at 1543; *see also Kirkpatrick v. City of Los Angeles*, 803 F.2d 485, 489 (9th Cir. 1986) ("The government has an interest in the integrity of its police force which may justify some intrusions on the privacy of police officers which the fourth amendment would not otherwise tolerate."). In this case, Defendant voluntarily applied for a police officer position and consented to answering the questions presented in the questionnaire. He cannot now claim an unlawful invasion of his privacy by the police investigators.

Defendant's second assumption is also wrong. He asserts that California laws protecting police officers from taking a polygraph examination also apply to citizens applying for the job of a police officer.[3] California Government Code § 3307 says, "no public safety officer shall be compelled to submit to a lie detector test against his or her will." Section 3307 is part of the Public Safety Officers Procedural Bill of Rights Act (§ 3300 et seq.). California courts have held

---

[3]There is no evidence that Defendant actually underwent a polygraph examination.

that the protections of the Act do not apply to the process of hiring police officers. "The Bill of Rights Act is not intended to regulate or restrict the appointment of police officers by local law enforcement agencies." *Los Angeles Police Protective League*, 35 Cal.App.4th at 1539 (*quoting Burden v. Snowden*, 2 Cal.4th 556, 566 (1992)). "Though the Act does not interfere with a locality's hiring decisions, it does impinge upon a public employer's firing decisions." *Id.* In other words, § 3307 does not make illegal the expectation of polygraph testing of an applicant for the position of police officer.[4] Consequently, the Court finds that the threat of a polygraph examination is not an illegal government invasion of Defendant's right to privacy, and therefore, there is no reason to apply the exclusionary rule to evidence discovered from the state search warrant.

Defendant next argues that California Penal Code § 832.7 prohibits the release of peace officer personnel records and that § 832.7 was violated by the disclosure of his pre-employment questionnaire answers. Section 832.7 clearly provides that California peace officer personnel records are confidential. *San Diego Police Officers Assn. v. City of San Diego Civil Service Comm.*, 104 Cal.App.4th 275, 287 (2002) ("We conclude section 832.7 provides that peace officer personnel records, as defined in section 832.8, are confidential. Thus, employing agencies may not freely disclose these records at public disciplinary appeal hearings if the affected officer asserts an objection."). However, Defendant cites no case, nor has this Court found a case, holding that § 832.7 also applies to recruits or applicants who did not become peace officers. Certainly, Defendant was never hired as a peace officer. The statutory language uses only the term "peace officer" and "custodial officer." California Penal Code §§ 830 *et seq.* employ great detail in describing the many public employees who are defined as a "peace officer" under California law. But job applicant or recruit is not among them. California Penal Code § 830 restricts the definition to those mentioned in the Code: "no person other than those designated in this chapter is

---

[4] Defendant also cites *Saroka v. Dayton Hudson Corp.*, 235 Cal.App.3d 654 (1991) (depublished), for the proposition that job applicants have the same privacy protections as employees. However, *Saroka* was a decision for which the California Supreme Court granted review and then dismissed without republication of the appellate court decision. *See Murray v. Oceanside Unified School Dist.*, 79 Cal.App.4th 1338 & n.3 (2000). Therefore, under California Rules of Court, it is not binding precedent and it may not be cited. *See* Cal. Rules of Court 8.1115(a).

a peace officer." The California legislature knows how to distinguish a job applicant from a peace officer. Penal Code § 832.05 refers to mental examinations for an "agency's screening of *peace officer recruits*." (Emphasis added.) Penal Code § 832.15 concerns "an individual *applying for a position* as a peace officer." (Emphasis added.) Penal Code § 832(e)(1)(a) refers to a person who has completed peace officer training but "*who does not become employed as* a peace officer." (Emphasis added.) In view of the specific words § 832.7 and in the context of the entire statute, using well-settled principles of statutory interpretation,[5] this Court finds that the intent of the California legislature was to deem confidential only those personnel records of individuals actually employed as peace officers, and not applicants, recruits or those who did not become employed as peace officers. Therefore, Penal Code § 832.7 does not apply to Defendant's pre-employment questionnaire and its disclosure to other investigating officers was not unlawful.

**The Fifth Amendment**

Defendant argues that his Fifth Amendment rights were violated by having the questions in the pre-employment questionnaire put to him. He cites two Supreme Court decisions concerning public employees. Those decisions and others were described by the Ninth Circuit in *Aguilera v. Baca*: "In a series of cases involving the Fifth Amendment rights of public employees, the Supreme Court has made clear that public employees cannot be compelled to choose between providing unprotected incriminating testimony *or losing their jobs*." 510 F.3d 1161, 1171 (9th Cir. 2007) (citing *Garrity v. New Jersey*, 385 U.S. 493 (1968); *Uniformed Sanitation Men Assn., v. Comm'r of Sanitation*, 392 U.S. 280 (1968); *Gardner v. Broderick*, 392 U.S. 273 (1968); *Lefkowitz v. Turley*, 414 U.S. 70 (1973))(emphasis added). The Supreme Court has described this line of cases "from *Garrity* to *Lefkowitz*" as "[h]olding that the State could not constitutionally seek to compel testimony that had not been immunized by threats of serious economic reprisal." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

These cases hold that where a public employee is forced to answer an incriminating question or lose his job, the answer will be immunized from use in later criminal proceedings.

---

[5] *See e.g., Long Beach Police Officers Assn. v. City of Long Beach*, 203 Cal.App.4th 292 (2012) (applying interpretative principles to determine whether officer's names were protected from disclosure by § 832.7 and finding they were not confidential).

- 5 -

"Where the choice is 'between the rock and the whirlpool,'" the incriminating answer will be immunized. *Garrity*, 385 U.S. at 498. Once again, however, there is no authority for extending the *Garrity* rule from public employees to applicants for public employment. Defendant was not a public employee. He was not faced with the choice between the "rock" of answering incriminating questions and the "whirlpool" of refusing to answer the questions and being fired from his job. Or, as the Eleventh Circuit has put it, he was not "faced with 'the Hobson's choice of either making an incriminating statement or being fired.'" *United States v. Vangates*, 287 F.3d 1315, 1321 (11th Cir. 2002).

The D.C. Circuit has held that a police officer claiming the protection of *Garrity* must believe that his statements are being compelled on threat of loss of job and that the belief must be reasonable. *United States v. Friedrick*, 842 F.2d 382, 395 (D.C. Cir 1998). Similarly, the First Circuit requires that two elements be present before the *Garrity* rule applies: (1) the person being investigated is explicitly told that failing to waive his Fifth Amendment right will result in firing from public employment; and (2) there is a statute mandating such a procedure. *United States v. Stein*, 233 F.3d 6, 16-17 (1st Cir. 2000). In this case, there is no declaration from Defendant that he was explicitly told he would be fired (or not hired) and there is no statute or municipal ordinance to that effect. According to the First Circuit, "absent elements of this nature, fear of punishment as a consequence of claiming one's rights does not protect one from the government's subsequent use of self-incriminating statements in a criminal trial." *Id.* at 17 (citing *United States v. Indorato*, 628 F.2d 711 (1st Cir. 1980)).

Like the D.C. Circuit, the First Circuit, and the Eleventh Circuit, the Ninth Circuit holds that the Fifth Amendment is not violated where an employee is not forced to waive his rights.

> We hold that the supervisors did not violate the deputies' Fifth Amendment rights when they were questioned about possible misconduct, given that the deputies were not compelled to answer the investigator's questions or to waive their immunity from self-incrimination. Indeed, it appears that the deputies were never even *asked* to waive their immunity.

*Baca*, 510 F.3d at 1172 (emphasis in original). Here, Defendant was not yet a public employee and was not forced to answer incriminating questions or lose his job. Instead, Defendant voluntarily answered the questions in the pre-employment questionnaire – and he had been

advised that his answers might be investigated. He was not faced with threats of serious economic reprisal for not answering. He was not faced with an inescapable choice between losing a job he already held and incriminating himself. Finally, no authority has been found extending the *Garrity* rule to job applicants. Therefore, Defendant's Fifth Amendment rights were not violated by the use of his questionnaire answers to obtain the state search warrant.

## CONCLUSION

Incriminating answers in the police department pre-employment questionnaire, which were then used by local law enforcement to obtain a state search warrant for Defendant's house and storage unit, were not obtained in violation of either state law or federal Fourth or Fifth Amendment rights. Therefore, Defendant's motion to reconsider this Court's previous Order denying his Motion to Suppress, is hereby, denied.

**IT IS SO ORDERED**.

DATED: April 9, 2012

Hon. Roger T. Benitez
United States District Judge